IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE MARTINEZ and OFELIA MARTINEZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 6967 |
| THE MASON DIXON LINES, INC. and DAVID GONZALEZ SANCHEZ, | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

This action between plaintiffs Jose and Ofelia Martinez ("Plaintiffs") and defendants

Mason Dixon Lines, Inc. ("Mason Dixon") and David Gonzalez Sanchez ("Sanchez")

(collectively "Defendants") arises from an October 12, 2007 vehicular accident in Polk County,

Texas involving Plaintiffs and Sanchez, a truck driver for Mason Dixon. Currently before the

court is Defendants' "Motion to Dismiss Sanchez for Lack of Personal Jurisdiction, Motion to

Dismiss the Case for Improper Venue, or Alternatively, Motion to Transfer the Case to the

Proper Forum in the United States District Court for the Eastern District of Texas" (Dkt. No. 5

("Defs.' Mot.")). For the reasons explained below, Defendants' motion is denied.

BACKGROUND

On October 12, 2007, Plaintiffs, who are citizens and residents of Illinois, and Sanchez, a

citizen of Florida and a former truck driver for Mason Dixon, which is a Delaware corporation

with its principal place of business in Michigan, allegedly were involved in a vehicular accident

in Polk County, Texas. As a result of this accident, Plaintiffs originally filed suit against

Defendants in the Circuit Court of Cook County, Illinois on September 28, 2009 ("Illinois

Action"). On October 7, 2009, Plaintiffs also filed a lawsuit based on the same October 12, 2007

incident against only Sanchez in the 411th District Court of Polk County, Texas ("Texas

Action"). Sanchez removed the Texas Action to the U.S. District Court for the Eastern District

of Texas on the basis of diversity of citizenship under 28 U.S.C. § 1332 on November 2, 2009.

On November 5, 2009, Defendants removed the Illinois Action to the U.S. District Court for the

Northern District of Illinois also based upon diversity of citizenship. Defendants then filed their

"Motion to Dismiss Sanchez for Lack of Personal Jurisdiction, Motion to Dismiss the Case for

Improper Venue, or Alternatively, Motion to Transfer the Case to the Proper Forum in the

United States District Court for the Eastern District of Texas" (Dkt. No. 5), which is currently

before this court.[1] For the reasons explained below, Defendants' motion is denied.

ANALYSIS

I.      Personal Jurisdiction

Plaintiffs bear the burden of proving that this court has personal jurisdiction over

Sanchez. *Cent. States S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440

F.3d 870, 875 (7th Cir. 2006). In ruling on a motion to dismiss for lack of personal jurisdiction,

the court can consider affidavits and other written materials submitted by the parties and "must

resolve all factual disputes in the plaintiff's favor." *See GMAC Real Estate, L.L.C. v.

Canyonside Realty, Inc.*, 2005 WL 1463498, at *2 (N.D. Ill. June 15, 2005) (citing *Softee Mfg.,

L.L.C. v. Mazner*, No. 03 C 3367, 2003 WL 23521295, at *2 (N.D. Ill. Dec. 18, 2003)).

---

[1] Although Defendants originally argued that this action should be dismissed for improper venue, they have now conceded that venue in the Northern District of Illinois is appropriate. (Dkt. No. 19 ("Defs.' Reply") at 1.)

"A federal district court in Illinois has personal jurisdiction over a party involved in a diversity action only if Illinois courts would have personal jurisdiction." *Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because the Seventh Circuit has "yet to find any 'operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,'" *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002)), the court "may collapse the personal jurisdiction analysis under Illinois law into the constitutional inquiry." *Id.*

To exercise personal jurisdiction consistent with the federal due process clause, "the defendant must have minimum contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Hyatt Int'l*, 302 F.3d at 716 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he defendant must have 'purposefully established minimum contacts within the forum State' before personal jurisdiction will be found to be reasonable and fair." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The minimum contacts must demonstrate that the "defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King*, 471 U.S. 462, 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), such that it "should reasonably anticipate being haled into court" in the forum State. *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction over a defendant is based on either (1) general jurisdiction or (2)

specific jurisdiction. *Cent. States*, 440 F.3d at 875. In this case, Plaintiffs argue that Sanchez is subject to suit in Illinois based on general jurisdiction. (*See* Dkt. No. 18 ("Pls.' Resp.") at 5.) "General jurisdiction . . . is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

Plaintiffs argue that Sanchez's recent contacts with Illinois are sufficient to exercise general jurisdiction over him. The court agrees. Based on Sanchez's deposition testimony, although he never traveled to Illinois before the October 12, 2007 accident at issue, since the accident Sanchez has been to Illinois approximately fifteen to twenty times as a truck driver for Dynasty Grogan Logistics ("Dynasty"), where he has worked for the last year and half. (Sanchez Dep. 16:20-17:5; 20:10-15; 21:19-24, Jan. 4, 2010 (attached as Ex. A. to Pls.' Resp.).) Sanchez admitted that his trips to Illinois, though not occurring on set days, are "pretty much" a regular run or route. (*Id.* at 21:19-22:11.) During those trips to Illinois, Sanchez picks up products for Dynasty in both Manteno, Illinois and Edwardsville, Illinois, and transports these Illinois products to either Florida or Georgia. (*Id.* at 21:25-22:18.) Sanchez also testified that as a driver for Dynasty he had "driven through" Illinois "about three or four times" en route to other destinations. (*Id.* at 22:19-23:10.)

This court appreciates that in *Obermeyer v. Gilliland*, 873 F. Supp. 153 (C.D. Ill. 1995) (Mills, J.), the court declined to exercise personal jurisdiction over a defendant truck driver, finding that his "frequent[] drives into Illinois [were] not sufficient to justify subjugating him to the power of Illinois Courts for suits not arising from his work in Illinois." *Id.* at 158. The record in *Obermeyer*, however, did not indicate how often the defendant driver had traveled to

Illinois before the underlying accident or whether he continued to make the trip when the court

addressed the personal jurisdiction issue. *Id.* at 157.

This court also recognizes that in *Simpson v. Quality Oil Co.*, 723 F. Supp. 382 (S.D. Ind.

1989) (Tinder, J.), the court found that Indiana lacked personal jurisdiction over a defendant

truck driver whose only contact with the forum state was "his occasional presence in the state as

a result of his delivery of fuel into Indiana." *Id.* at 390. Notably *Simpson*, similar to *Obermeyer*,

did not discuss the actual frequency of the driver's contacts with Indiana or indicate if his trips to

the state, like Sanchez's, were part of his regular business routine.

Under the facts of this case, this court is more persuaded by the reasoning in *Carter v.*

*Massey*, 436 F. Supp. 29 (D. Md. 1977), which exercised personal jurisdiction over a defendant

truck driver who traveled to Maryland "frequently, on a regular basis, in a purposeful way, and

in a manner integral to [his] . . . business[] of . . . truck driver." *Id.* at 33-34. Similarly here,

Sanchez, by his own admission, has "pretty much" a regular route into Illinois for his current

employer, Dynasty. The court, therefore, finds that Sanchez purposefully travels into Illinois as

part of his business as a truck driver. Based on these "continuous and systematic general

business contacts" with Illinois, haling Sanchez into an Illinois court to defend himself in this

action would not "offend traditional notions of fair play and substantial justice." *Hyatt Int'l*

*Corp.*, 302 F.3d at 716. Consequently, Defendants' motion to dismiss Plaintiffs' claims against

Sanchez for lack of personal jurisdiction is denied.

II.     Transfer Venue Under § 1404(a)

In the alternative, Defendants move to transfer venue to the Eastern District of Texas.

"For the convenience of the parties and witnesses, [and] in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a). Specifically, the court may transfer an action under § 1404(a) if "(1) venue

is proper in the transferor district; (2) the transferee court is in a district where the action may

have been brought originally; and (3) the transfer is for the convenience of parties and witnesses

and in the interest of justice." *Competitive Strategies Group v. IP Commc'ns Corp.*, No. 00 CV

0057, 2000 WL 286789, at *4 (N.D. Ill. Mar. 13, 2000). "The weighing of factors for and

against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is

committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d

217, 219 (7th Cir. 1986)

Defendants as the moving party bear the burden of proving "that the transferee forum is

clearly more convenient." *Coffey*, 796 F.2d at 219-20. Transfer, however, is not appropriate if it

"merely transforms an inconvenience for one party into any inconvenience for the other party."

*Chem. Waste Mgmt. v. Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994) (citing *Sage Prods., Inc. v.*

*Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)).

Because the parties do not dispute that venue is proper in both this court and the Eastern

District of Texas, the court only addresses whether transfer to the Eastern District of Texas is for

the convenience of parties and witnesses and in the interest of justice.

1.    Convenience of the Parties and Witnesses

In determining whether the convenience of the parties and witnesses supports a transfer,

courts in this district generally consider "(1) the plaintiff's choice of forum; (2) the situs of

material events; (3) the relative ease of access to sources of proof; (4) the convenience of the

witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Brandon*

*Apparel Group v. Quitman Mfg.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999).

A.      Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is given substantial deference, *Morton Grove*

*Pharmaceuticals, Inc. v. National Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill.

2007), but it receives less weight "when another forum has a stronger relationship to the dispute

or when the forum of plaintiff's choice has no significant connection to the situs of material

events," *id.*  In this case, because the accident at issue occurred in Texas, the court finds that

Plaintiffs' choice of forum only slightly weighs against transfer.

B.      Situs of Material Events

As discussed above, Texas, as the state where the underlying accident occurred, is the

situs of material events.  In addition, Plaintiffs sustained their injuries and received their initial

medical treatment in that state.  Consequently, this factor supports transfer to the Eastern District

of Texas.

C.      Relative Ease of Access to Sources of Proof

The parties both argue that their respective preferred forums have greater access to

sources of proof.  Any relevant documents, however, presumably can be stored and produced

electronically, thereby reducing any potential burden in transferring documents. *See Metzger v.*

*Sleeveco, Inc.*, No. 09-cv-6071, 2010 WL 563073, at *2 (N.D. Ill. Feb. 12, 2010) ("Documents

now are easily scanned, stored, and electronically transmitted; moving documents no longer

creates the onerous burden it may once have imposed.").  Defendants have not demonstrated

why any documentary evidence located in Texas could not be electronically stored, nor have

they identified any physical evidence which would be burdensome to transport to Illinois.  As a

result, the court does not find that this factor supports transfer.

D.      Convenience of the Witnesses

The convenience of non-party witnesses is often afforded the most weight in deciding

whether transfer is appropriate. *See Brandon Apparel*, 42 F. Supp. 2d at 834. "The party

seeking transfer must clearly specify the key witnesses to be called and make a general statement

of their testimony." *Chem. Waste Mgmt.*, 870 F. Supp. at 876 (citing *Heller Fin., Inc. v.*

*Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

In this case, Defendants specifically name only one witness in support of their motion to

transfer: the police officer who investigated the Texas accident, Officer W. Glen Goodwin. (*See*

Defs.' Mot. 9.) Notably, other than generally alleging that "[a] trial is more convenient for

witnesses when it is in the state in which the residents reside" (Defs.' Mot. 9), Defendants fail to

establish that Officer Goodwin would be unwilling to testify voluntarily in this forum or that his

video deposition taken in Texas would not suffice if he is unwilling to come to Chicago to

testify. The court, therefore, does not afford much weight to Defendants regarding this factor.

Defendants additionally contend that "[a]ny other occurrence of post-occurrence

witnesses to the crash are obvious material witnesses in this case and likely reside in the Eastern

District of Texas, not in Illinois" (*id.*), but Defendants have not identified these witnesses nor

described the subject of their testimony. Again, such vague assertions prevent the court from

evaluating the significance of these witnesses and the amount of weight to afford to their

potential inconvenience in testifying in Illinois. *See Aldridge v. Forest River, Inc.*, 436 F. Supp.

2d 959, 962 (N.D. Ill. 2006).

Plaintiffs, in contrast, have listed several non-party witnesses residing in Illinois

including four treating physicians and six family members, whose testimony Plaintiffs contend is relevant to their damages. (Dominguez Decl. ¶¶ 5, 9 (attached as Ex. D to Pls.' Resp.).) Because Plaintiffs' family members presumably will be amenable to testifying in Texas even though they would not be subject to compulsory process in that state and their testimony likely is cumulative, the court does not afford their inconvenience much weight in its analysis.

Plaintiffs' treating physicians, however, are non-parties with medical practices in Illinois. Their voluntarily traveling to Texas is unlikely as it potentially would be disruptive of and inconvenient to the care they give to their other patients in their practices. Defendants have neither challenged the relevance of the treating physicians' testimony nor disputed that litigating this case in Illinois will be more convenient for these witnesses. Consequently, the court finds that Defendants have failed to prove that the convenience of the non-party witnesses supports transfer.

E. Convenience of the Parties

With respect to the fifth factor, the convenience of the parties, Defendants have not argued that litigating this case in the Eastern District of Texas will be more convenient for them than proceeding in the Northern District of Illinois. To the contrary, transferring venue does not appear likely to reduce Defendants' inconvenience in litigating this case. Sanchez resides in Orlando, Florida and Mason Dixon is headquartered in Warren, Michigan; regardless of whether this case proceeds in Illinois or Texas, both Defendants will have to travel outside of their respective home states to attend.

Plaintiffs, on the other hand, have demonstrated that transferring this litigation to the Eastern District of Texas will impose a significant burden on them. According to the declaration

9

of Plaintiffs' daughter, Esmeralda Martinez Dominguez ("Dominguez"), Plaintiffs, who reside in Chicago, Illinois, are an elderly couple with limited mobility. (Dominguez Decl. ¶¶ 4, 10-12.) Jose Martinez is 85 years old and, after "sustain[ing] lower extremity fractures" from the accident at issue, "only able to walk in a very slow manner making travel difficult." (*Id.* ¶¶ 7, 12.) Similarly, Ofelia Martinez is 81 years old and had her right leg amputated as a result of her injuries from the Texas accident. (*Id.* ¶¶ 7, 11.) According to Dominguez, her mother "utilize[s] a walker to go very short distances within her home, . . . primarily requires a wheelchair to move around, and [relies upon] family assistance to conduct her activities of daily living." (*Id.* ¶ 11.) Based on this uncontroverted evidence, the court finds that Plaintiffs' alleged hardships in transferring this case substantially outweigh the Defendants' inconvenience in litigating in the Northern District of Illinois. This factor, therefore, weighs against transfer.

## 2. Interests of Justice

The court next addresses the interests of justice factors, which "embrace[] traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Law Bulletin Publ'g Co. v. LRP Publ'ns*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998) (citing *TIG Ins. Co. v. Brightly Galvanized Prods., Inc.*, 911 F. Supp. 344, 346 (N.D. Ill. 1996)). The interests of justice involve such considerations as the speed at which the litigation will proceed to trial, trying related litigation together, and the court's familiarity with the applicable law. *Heller Fin.*, 883 F.2d at 1293.

### A. Speed of Resolving Litigation

Relying on 2008 statistics from the Administrative Office of the U.S. Courts, Defendants argue that a transfer to the Eastern District of Texas will result in a more expedient resolution of

this dispute because the Eastern District of Texas's median time from filing to trial is 9 months

shorter than this district's. (Defs.' Mot. 11; *see also id.* at Ex. 6.) The statistics for 2009,

however, indicate that the median time from filing to trial in civil cases in the Eastern District of

Texas was 25 months compared to 27.8 months in the Northern District of Illinois.

Administrative Office of the United States Courts, *2009 Annual Report of the Director: Judicial*

*Business of the United States Courts* 184-85 (2010), *available at*

http://www.uscourts.gov/cgi-bin/cmsd2009.pl (select report for "Illinois Northern" and "Texas

Eastern"). In addition, the median time from filing to disposition in civil cases was 6.2 months

in the Northern District of Illinois as opposed to 10.8 months in the Eastern District of Texas.

*Id.* at 172-73. Thus, depending on the statistics, this litigation potentially could be resolved

faster in this forum. The court, therefore, does not find that this factor favors transfer.

> B. Trying Related Cases Together

Defendants also argue that the pendency of two litigations related to the same underlying

accident—the Texas Action and the Illinois Action—strongly favors transfer of the Illinois

Action to the Eastern District of Texas. Although the judicial economy of trying related cases

together typically supports transfer, in this case, Plaintiffs have indicated that they could dismiss

the Texas Action and proceed only in Illinois against both Sanchez and Mason Dixon if this

court exercises personal jurisdiction over Sanchez. (Pls.' Resp. 15.) As discussed above, the

court finds that Sanchez is subject to jurisdiction in Illinois. Thus, in the absence of a related

case, this factor does not support transfer to the Eastern District of Texas.

> C. Familiarity with Applicable Law

Additionally, Defendants contend that under Illinois' choice of law rules, Texas law

should apply to Plaintiffs' claims.  The application of Texas law, according to Defendants, further supports transfer to the Eastern District of Texas.  The court, however, need only undertake a choice of law analysis in the presence of a conflict between Illinois and Texas law, *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state . . . ."), which Defendants have not identified.  In the absence of a conflict, Illinois law governs.  *Id.*  Moreover, even if Texas law would apply to Plaintiffs' claims, this court previously has applied foreign state law and believes that it is capable of applying Texas law in this case.  Consequently, the court does not find that its familiarity with the applicable law supports transfer to the Eastern District of Texas.

        C.      Balancing of the Relevant Factors

After balancing the relevant factors in the § 1404(a) analysis, the court finds that Defendants' have not satisfied their burden of proving "that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20.  Accordingly, Defendants motion to transfer is denied.

III.    Dismissal Under Federal Common Law Principles or 735 ILCS 5/2-619(a)(3)

Lastly, Defendants argue that the Illinois Action should be dismissed under either 735 ILCS 5/2-619(a)(3) or "federal common law principles" based on the pending Texas Action.  According to Defendants, both 735 ILCS 5/2-619(a)(3) and federal common law principles support dismissal when "there are two actions pending in federal district courts between the same parties for the same set of operative facts."  (Dkt. No. 12 ("Defs.' Supplement") at 5.)  As discussed above, Plaintiffs have indicated that they could dismiss the Texas Action against Sanchez if this court exercises personal jurisdiction over him.  Assuming without deciding that

either 735 ILCS 5/2-619(a)(3) or Defendants' alleged "federal common law principles"[2] could

support a dismissal under certain circumstances, without a second action pending in Texas,

dismissal of the Illinois Action is not warranted here. Consequently, Defendants request for

dismissal under either 735 ILCS 5/2-619(a)(3) or federal common law principles is denied.

CONCLUSION

For the reasons explained above, Defendants' "Motion to Dismiss Sanchez for Lack of

Personal Jurisdiction, Motion to Dismiss the Case for Improper Venue, or Alternatively, Motion

to Transfer the Case to the Proper Forum in the United States District Court for the Eastern

District of Texas" (Dkt. No. 5) is denied. A status is set for April 27, 2010 at 9:00 a.m. to set

further dates. The parties are encouraged to discuss settlement.


ENTER:

_____

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 7, 2010

---

[2] The court notes that Defendants have not identified any legal authority supporting its proposed "federal common law principles" theory. Instead, they cite to a trial brief from one of the parties in *CPI Plastics Group, Ltd. v. Dry Enterprise, Inc.*, 2007 WL 1605589 (N.D. Ill.). (*See* Defs.' Supplement 5, 7.)